# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| NILS RAFAEL PINTO, et al., |
| Plaintiffs, |
| v. |
| DISTRICT OF COLUMBIA, |
| Defendant. |

Civil Action No. 12-01699
DAR

## MEMORANDUM OPINION

Plaintiffs, Nils Rafael Pinto and Marta Rivera, in their own right and on behalf of K.P-R., their minor child, commenced this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, challenging the portion of a Hearing Officer Determination ("HOD") denying tuition reimbursement and prospective placement of K.P-R. at the Lab School of Washington as a remedy for denial of a free appropriate education ("FAPE"). Complaint for Declaratory and Injunctive Relief (Document No. 1), ¶¶ 1-2, 62-64.

The parties' cross-motions for summary judgment are pending for determination by the undersigned. *See* Plaintiffs' Motion for Summary Judgment (Document Nos. 11, 13); Defendant District of Columbia's Motion for Summary Judgment (Document Nos. 12, 15). Upon consideration of the motions; the memoranda in support thereof and in opposition thereto, including the pre-hearing and post-hearing memoranda filed by the parties (Document Nos. 16, 17, 18, 19, 22, 23, 25, 26, 30, 31); the administrative record (Document No. 9); and the entire record herein, the undersigned will deny Plaintiffs' motion, and grant Defendant's motion.

**BACKGROUND**[1]

Plaintiffs in this action are [K.P-R.], a student eligible to receive special education and related services under the IDEA, and his parents and next friends, Nils Rafael Pinto and Marta Rivera. During the fall of 2010, [K.P-R.] was enrolled at Horace Mann Elementary School, a public school within the District of Columbia Public Schools ("DCPS"). Compl. ¶ 13. Around that time, [K.P-R.] was diagnosed with a learning disability, a mixed receptive-expressive language disorder, inability to sustain attention, deficits in certain subject areas, and difficulties with organization, planning and motor control. *Id*. ¶¶ 10, 15, 17-21.

During the 2010-2011 school year, plaintiffs met with DCPS officials on several occasions to develop an individualized education program ("IEP") for [K.P-R.] Compl. ¶¶ 22-24, 28, 44. According to plaintiffs, DCPS refused to incorporate adequate special education support and speech and language therapy into [K.P-R.'s] IEP. *Id*. ¶¶ 26, 30-33, 45-46, 49, 52. On January 11, 2011, [K.P-R.'s] parents notified DCPS that they were removing [K.P-R.] from Horace Mann and would be seeking reimbursement for appropriate non-public special education services. *Id*. ¶ 35. [K.P-R.] finished the school year at [Kingsbury] Day School, a private school that serves learning disabled students. *Id*. ¶ 36. Before the 2011-2012 school year began, [K.P-R.'s] parents transferred [K.P-R.] to the Lab School of Washington, another private educational institution providing services exclusively to learning disabled children. *Id*. ¶ 53.

In April 2012, [K.P-R.'s] parents filed a request for an administrative due process hearing to challenge the IEP created for [K.P-R.] Compl. ¶ 54. After a four-day hearing in June and

---

[1] The salient background is already a matter of record. *See Pinto ex rel Pinto v. Dist. of Columbia*, 938 F. Supp. 2d 25 (D.D.C. 2013). For ease of reference, it is reproduced here without further citations.

July 2012, the Hearing Officer determined that DCPS had failed to conduct appropriate evaluations of [K.P-R.] and, as a result, had developed an inappropriate IEP . . . [.] *Id*. ¶¶ 56, 60. The Hearing Officer declined, however, to grant plaintiffs' request for publicly funded placement at the Lab School or reimbursement for already-paid tuition expenses, on the basis that the Lab School was not the least restrictive environment for [K.P-R.] *Id*. ¶¶ 62, 65. The Hearing Officer instead ordered DCPS to conduct appropriate evaluations of [K.P-R.] and convene a meeting to revise [K.P-R.'s] IEP as appropriate within 30 days of a written request by plaintiffs. Compl. ¶ 64.

On July 26, 2012, plaintiffs timely notified DCPS of their desire to have DCPS commence this process. *Id*. ¶ 68. By October 2012, however, DCPS had not completed the required evaluations. *Id*. ¶ 71. Plaintiffs brought two actions in this Court: the first seeking compliance with the Hearing Officer's order that DCPS conduct the necessary evaluations and develop an appropriate IEP; the second requesting review of the Hearing Officer's decision not to place [K.P-R.] at the Lab School or grant tuition reimbursement.

To remedy DCPS' noncompliance with the Hearing Officer's order, plaintiffs filed a motion for preliminary injunction in a related case. *Blackman v. Dist. of Columbia*, Civ. Action No. 97-1629, Dkt. No. 2289. The Court referred the preliminary injunction motion to Special Master Elise Baach. While the motion was pending, DCPS completed the required evaluations and developed a new IEP for [K.P-R.], which includes special education services as well as speech and language therapy. *See* Plaintiffs' Supplemental Memorandum, *Blackman v. Dist. of Columbia*, Civ. Action No. 97-1629, Dkt. No. 2293. On December 11, 2012, the Special Master issued her report agreeing with plaintiffs that DCPS had failed to timely comply with the Hearing

Officer's order. *Blackman* R & R at 5–8. The Special Master declined to award plaintiffs their requested relief of prospective placement at the Lab School, however, explaining:

> An outright adoption of the requested relief would require DCPS to fund a placement at [the Lab School]. What makes the recommendation of this remedy particularly problematic here is that the Hearing Officer expressly rejected a request for the same relief. It is one thing to penalize DCPS for not doing what a Hearing Officer has ordered; it is entirely different to require DCPS to do something that a Hearing Officer expressly declined to order.
>
> Moreover, the Hearing Officer's refusal to order placement at the [Lab School], and the rationale for that refusal, is now the subject of the appeal in this Court. Unlike this request for injunctive relief, which is discretionary in nature, the plaintiffs have a statutory right under the IDEA to appeal in federal court part or all of an HOD, and they have now exercised that right. By doing so, the plaintiffs and the local education agency will both be presented with an opportunity to address the soundness of the Hearing Officer's reliance on the IDEA's mandate to educate a student in the "least restrictive environment." The combination of these two factors – the Hearing Officer's rejection of the same relief and the fact that the resolution in federal court might answer an outstanding question of substance – lead to the conclusion that a decision on placement and funding under IDEA is preferable to granting the relief sought in this forum.

*Blackman* R & R at 8.

The Special Master noted that DCPS' delay in conducting the necessary evaluations had forced plaintiffs to choose between continuing [K.P-R.'s] enrollment at the Lab School or starting [K.P-R.] at a public school without an appropriate IEP. *Blackman* R & R at 8-9. Accordingly, she recommended tuition reimbursement for the period between August 28, 2012 through February 15, 2013. *Id.* 9-10. Neither party filed objections, and the Court therefore adopted and approved the Report and Recommendations. *See Blackman v. Dist. of Columbia*, Civ. Action No. 97-1629, Dkt. No. 2305 (Jan. 9, 2013).

Plaintiffs brought the instant action to challenge the Hearing Officer's decision denying

placement at the Lab School and reimbursement for already paid tuition and fees. Plaintiffs assert four claims against the District: (1) failure to provide a free, appropriate public education, in violation of the IDEA and District of Columbia law; (2) failure to place and fund [K.P-R.] in an appropriate program and placement, in violation of the IDEA and District of Columbia law; (3) failure by the Hearing Officer to properly evaluate the relevant facts and apply the relevant legal standards, in violation of plaintiffs' due process rights under the IDEA and District of Columbia law; and (4) failure by the Hearing Officer to award the requested remedy, including reimbursement for tuition expenses and costs. Compl. ¶¶ 78-87. Plaintiffs request declaratory, injunctive, and monetary relief, including reimbursement for tuition expenses and costs incurred in enrolling [K.P-R.] at the Lab School for most of the 2011-2012 school year, as well as prospective placement of [K.P-R.] at that institution. *Id*. at 13.

**ADMINISTRATIVE PROCEEDINGS**

At the time Plaintiffs Pinto and Rivera, through their counsel, filed their April 2012 due process complaint notice, *see Pinto*, 938 F. Supp. 2d at 27-28, K.P-R. had been a student at the Lab School of Washington since October 2011. AR (Document No. 9-5) at 5. In the notice, Plaintiffs stated that prior to his enrollment at Lab, K.P-R. was a student at Kingsbury Day School from January to October 2011, and spent the first semester of the 2010-2011 school year at Horace Mann, a DCPS elementary school. *Id.* Plaintiffs alleged that "[w]hile at Horace Mann, [K.P-R.] was denied critical special education services[,]" and that "[t]he school system's continued unwillingness to provide an effective Individualized Education Program ("IEP") forced the parents to enroll [K.P-R.] at [Kingsbury] and now at Lab, and to initiate this due process appeal." *Id.* Plaintiffs maintained that the October 2010 IEP was "comprehensively

uninformed and inappropriate for [K.P-R.'s] needs[,]" and that the report of the clinician engaged by Plaintiffs "dismissed" by DCPS "[w]ithout a basis[.]" *Id.*

Plaintiffs stated that they gave notice to DCPS in January 2011 "that [K.P-R.] would be removed from the school system, that the parents would be seeking an appropriate non-public special education school for [K.P-R.], and that public funding would be sought for that placement." AR (Document No. 9-5) at 9. Plaintiffs complained that at IEP team meetings in April and May 2011, DCPS rejected the opinion of clinicians engaged by Plaintiffs that full-time special education was warranted. *Id.* at 10-12. Plaintiffs stated that in October 2011, they gave DCPS notice that they intended to enroll K.P-R. at Lab, *id.* at 12, and that "[s]ince enrolling at Lab, [K.P-R.] has adjusted well to the program and is making significant progress." *Id.*

Plaintiffs maintained that "DCPS has steadfastly failed to recognize that [K.P-R.] has needs that extend beyond speech and language[,]" and thus "has denied [K.P-R.] appropriate special education services, and failed to provide him with a free and appropriate education as required by law." AR (Document No. 9-5) at 12. Plaintiffs articulated three issues: (1) "Did DCPS deny [K.P-R.] a Free Appropriate Public Education for the 2011-2012 school year, from October 2011 forward[,] by failing to propose an appropriate IEP, including accurate and complete present levels of performance, appropriate goals and objectives, services and accommodations and modifications?" (2) "Did DCPS deny [K.P-R.] a Free Appropriate Public Education by failing to propose an appropriate placement from October 2011 forward?" and (3) "Is Lab School of Washington a proper placement?" *Id*. at 13. As relief, Plaintiffs requested "that DCPS reimburse the parents for the cost of enrollment at Lab School of Washington for the 2011-2012 school year." *Id.*

Following a due process hearing which spanned four days (*see* Document Nos. 9-1, 9-2. 9-3, 9-4), the Hearing Officer rendered his determination. With respect to the first issue, the Hearing Officer found that "DCPS failed to conduct appropriate evaluations of the student[,]" and thus concluded that "the [May 2011] IEP is inappropriate and the present levels of performance . . . are not valid." AR (Document No. 9-5) at 57; *see also id.* at 58 ("The evidence in this case clearly demonstrates DCPS did not conduct its own evaluations."); *id.* at 59 (failure of DCPS to conduct its own evaluations, and reliance of DCPS on evaluations it regarded as flawed, "significantly impeded the [parents'] opportunity to participate in the decision making process regarding provision of FAPE."). The Hearing Officer recognized that "private placement and reimbursement [of tuition] might be an appropriate remedy[]" for the failure of DCPS to provide K.P-R. a FAPE, *id.* at 59-60 (citing 34 C.F.R. § 300.148); however, the Hearing Officer concluded that such remedy "is inappropriate and unreasonable[,]" and instead, directed DCPS to conduct appropriate evaluations of K.P-R. *Id.* at 60.[2]

With respect to the remaining issues – framed by the Hearing Officer as "[w]hether DCPS denied the student a FAPE by failing to propose/provide the student an appropriate placement/location of services from October 13, 2011, to present? – the Hearing Officer, "[unconvinced] that [the] evidence demonstrates the student must be totally removed from all general education peers[,]" concluded that "the parents' remedy for reimbursement of [tuition at Lab] is inappropriate because the school is not the least restrictive environment for the student."

---

[2] The Hearing Officer predicated his conclusion, at least in part, upon his consideration of "[Petitioners'] repeated withdrawals of three previous complaints and the resulting delay in promptly adjudicating the issues so that DCPS could have a prompt opportunity to correct any deficiencies in the IEP and/or placement that were found to be a denial of FAPE[.]" *Id.*

AR (Document No. 9-5) at 60; *see also id*. at 61 ("[T]he Hearing Officer is not convinced by the evidence that student should be totally removed from a setting that will allow [student] contact with any non-disabled peers. The evidence demonstrates that [Lab] does not afford the student an opportunity to interact with non-disabled peers.") (citing, *inter alia*, *Roark ex rel. Roark v. Dist. of Columbia*, 460 F. Supp. 2d 32, 43 (D.D.C. 2006) ("The IDEA requires school districts to place disabled children in the least restrictive environment possible.")). In so finding, the Hearing Officer credited the testimony that K.P-R., during the time K.P-R. attended a public elementary school, "was performing at grade level[,] and was engaged with and [benefitting] from being in a classroom with . . . non-disabled peers." *Id*.[3] Additionally, the Hearing Officer found that "[because Plaintiffs did not demonstrate] that DCPS cannot provide the student an appropriate placement[,]" and thus concluded that "DCPS is not required to pay for the student's placement at [Lab]." *Id*. at 62.

**THE PARTIES' CONTENTIONS**

Plaintiffs, in the complaint which they filed to commence the instant action, submit that the Hearing Officer "correctly determined" that DCPS denied K.P-R. a FAPE during the 2011-2012 school year, but "erred in denying the requested relief." Complaint, ¶2. More specifically, they allege that the Hearing Officer (1) "incorrectly found that [Lab] was not the least restrictive environment . . . for K.P-R. and then entirely denied reimbursement for tuition paid to Lab for the 2011-2012 school year[]"; (2) "erred in finding the actions of the parents unreasonable, using

---

[3] The Hearing Officer also considered the evidence offered by Lab staff and the educational advocate that K.P-R. was benefitting from methodologies utilized by the Lab instructors, *see id*.; however, he also considered that "their testimony also reflected an opinion that [K.P-R.] could benefit from being with [K.P-R.'s] non-disabled peers." *Id*.

that mis-determination as justification for denying the requested relief[]"; and (3) "incorrectly gave the school system another chance by ordering it to conduct additional evaluations and return to the IEP process." *Id.*; *see also id.*, ¶¶82-87.

In their motion for summary judgment, Plaintiffs – the Hearing Officer's finding in their favor notwithstanding – ask that this Court make "Make an Independent Determination of Whether Defendant Provided K.P-R. With a FAPE." Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memorandum") at 14; *see also id*. at 15-21. Second, Plaintiffs challenge the determination to deny reimbursement for tuition at Lab for the period from October 2011 through the end of the 2011-2012 school year, and ask that the Court receive as additional evidence email communications with Defendant after the due process hearing. *Id.* at 14-15, 21-34. Third, Plaintiffs maintain that "Lab was the proper placement for K.P-R. for the 2012-2013 school year because the IEP drafted by defendant in October of 2012 did not provide a FAPE." *Id.* at 34-36.

Defendant, in opposition to Plaintiffs' motion and in support of its own, submits that "[t]his Court must limit its review in this appeal to the May 2011 IEP and the question of whether Plaintiffs should be reimbursed for the Lab School for the 2011-2012 school year, because that was the issue under review by the hearing officer whose decision is appealed in this case." Memorandum of Points and Authorities in Support of Defendant District of Columbia's Motion for Summary Judgment ("Defendant's Memorandum") at 34; *see also* Defendant District of Columbia's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment (Document No. 16) ("Defendant's Opposition") at 19-32. Defendant maintains that the sole issue properly addressed by this Court thus is "whether reimbursement

was warranted from October 13, 2011, when [K.P-R.] began attending Lab School to June 20, 2012, the date of the hearing officer's decision[]"; with respect to that issue, Defendant argues that the Hearing Officer's determination to deny reimbursement for that period should be affirmed. *See* Defendant's Memorandum at 34-44; Defendant's Opposition at 33-44.

Plaintiffs, in their opposition to Defendant's motion, reiterate their contention that the Hearing Officer erred in declining to award reimbursement of tuition at Lab for the period from October 2011 through the end of the 2011-2012 school year as a remedy for denial of FAPE. *See* Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Document No. 17) ("Plaintiffs' Opposition") at 6-10. Additionally, they maintain that "[t]he [i]ssue of K.P-R.'s 2012-2013 [e]ducational [p]lacement is [p]roperly [b]efore the Court[]" *id*. at 2-6, 10-12; *see also* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (Document No. 19) at 2-5, a proposition which Defendant continues to dispute, *see* Defendant District of Columbia's Reply to [Plaintiffs'] Opposition to Defendant's Motion for Summary Judgment (Document No. 18) ("Defendant's Reply") at 1-3.

**APPLICABLE STATUTORY FRAMEWORK**

A primary purpose of the enactment of IDEA was "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A); § 1412 (a)(1)(A) ("A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21 . . . ."). To ensure access to a free appropriate public education for children with disabilities, "the child's parents, teachers, school officials, and other

professionals collaborate in a 'multi-disciplinary team' to develop an individualized educational program [] to meet the child's unique needs." *Smith v. Dist. of Columbia*, No. 12-2058, 2014 WL 1425737, at *4 (D.D.C. Mar. 14, 2014) (citing *D.K. v. Dist. of Columbia*, 983 F. Supp. 2d 138, 141 (D.D.C. 2013) (citing 20 U.S.C. § 1414(d)(1)(B)); *see also Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005); *Dist. of Columbia v. Wolfire*, No. 12-01527, 2014 WL 169873, at *1 (D.D.C. Jan. 16, 2014); *Dist. of Columbia v. Oliver*, No. 13-00215, 2014 WL 686860, at *3 (D.D.C. Feb. 21, 2014).

Once the IEP has been developed, "the school system must provide an appropriate placement that meets those needs and, if an appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available education-related services provided by private organizations to supplement a public placement." *Petties v. Dist. of Columbia*, 238 F. Supp. 2d 114, 116 (D.D.C. 2002) (citing 20 U.S.C. § 1412(a)(10); 34 C.F.R. §§ 300.349, 300.400-402.); *see also S.S. ex rel. Street v. Dist. of Columbia*, No. 13-557, 2014 WL 4650885, at *12 (D.D.C. Sept. 19, 2014) ("A student's IEP determines whether an educational placement is appropriate; the placement does not dictate the IEP.") (citations omitted). Conformity with the dictates of IDEA also requires that children with disabilities be educated in the least restrictive environment: "To the maximum extent appropriate, children with disabilities[] . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A); *see also N.T. v. Dist. of Columbia*, 839 F. Supp. 2d

29, 35 (D.D.C. 2012) (IDEA requires local education agencies to place students with disabilities in "the least restrictive environment possible") (citations omitted).

A parent, or adult student, may file an administrative complaint and have an opportunity for an impartial due process hearing if he or she objects to "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6), (f)(1). A party to the administrative proceeding may challenge the decision "in any State court of competent jurisdiction or in a district court of the United States . . . ." § 1415(i)(2)(A).

**APPLICABLE STANDARD OF REVIEW**

The applicable standard of review is well-settled: "In evaluating a hearing officer's decision in an IDEA case such as this one, a court reviews the administrative record, may hear additional evidence, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate." *Patterson v. Dist. of Columbia*, 965 F. Supp. 2d 126, 130 (D.D.C. 2013) (citing 20 U.S.C. § 1415(i)(2)(C)); *see also S.S. ex rel. Street*, 2014 WL 4650885, at *4 ("In a civil action reviewing an IDEA administrative determination, '[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive.'") (citation omitted). The preponderance-of-the-evidence standard of review "does not authorize unfettered *de novo* review." *K.S. v. Dist. of Columbia*, 962 F. Supp. 2d 216, 223 (D.D.C. 2013) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). Rather, "[c]ourts must give administrative proceedings 'due weight,' and 'factual findings from the administrative proceedings are to be considered prima facie correct.'" *Id.* (citations omitted); *cf. S.S. ex rel. Street*, 2014 WL

4650885, at *5 ("[T]he Court should 'defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record.'") (citations omitted).

At the same time, "[a] court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate[,]" and "may not simply rely on the Hearing Officer's exercise of discretion[.]" *Turner v. Dist. of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (internal quotation marks and citations omitted).

"The burden of proof is with the party challenging the administrative determination, who must 'at least take on the burden of persuading the court that the hearing officer was wrong.'" *Patterson*, 965 F. Supp. 2d at 130 (citation omitted); *see also K.S.*, 962 F. Supp. 2d at 223 (with respect to judicial review of an HOD, "the burden of proof is always on the party challenging the administrative determination[.]").

A district court has no subject matter jurisdiction with respect to a claim that has not first been pursued through administrative proceedings. *E.g.*, *Douglas v. Dist. of Columbia*, No. 13-1758, 2014 WL 4246580, at *2 (D.D.C. Aug. 28, 2014) ("Under the IDEA, this Court 'has no subject matter jurisdiction over an IDEA claim that has not first been pursued through administrative channels.'") (citing *Douglass v. Dist. of Columbia*, 750 F. Supp. 2d 54, 60-61 (D.D.C. 2010); *see also Copeland v. Dist. of Columbia*, No. 13-00837, 2014 WL 4520213, at *5 (D.D.C. Sept. 15, 2014) *(*citing *Holdzclaw v. Dist. of Columbia*, 524 F. Supp. 2d 43, 47 (D.D.C. 2007) ("[A]n allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court.") (citations omitted).

**DISCUSSION**

***Plaintiffs Have Failed to Demonstrate that the Hearing Officer Erred in
His Determination to Decline to Award Reimbursement of Tuition at Lab
for the 2011-2012 School Year***

The Hearing Officer found in favor of Plaintiffs with respect to their claim that DCPS denied K.P-R. a FAPE during the 2011-2012 school year through its failure to evaluate K.P-R. in accordance with applicable law. AR (Document No. 9-5) at 57 ("DCPS failed to conduct appropriate evaluations of the student and thus . . . the Hearing Officer concludes that [the] IEP is inappropriate and the present levels of performance . . . are not valid. [Plaintiffs] sustained the burden of proof on this issue by a preponderance of the evidence."). Thus, the only issue regarding the 2011-2012 for determination in this action is whether Plaintiffs have demonstrated that the Hearing Officer erred in his determination to decline to award reimbursement of tuition at Lab during the 2011-2012 school year as a remedy for the denial of FAPE. The undersigned finds that Plaintiffs have failed to do so.

It is settled that IDEA's "broad remedial reach" encompasses "requir[ing] an LEA to provide tuition reimbursement as compensation when a parent enrolls a disabled child in a private school due to the LEA's deficiencies in providing a FAPE." *L.R.L. ex rel. Lomax v. Dist. of Columbia*, 896 F. Supp. 2d 69, 76 (D.D.C. 2012) (citation omitted); *see also Oliver*, 2014 WL 686860, at *5 ("[T]he remedial authority for which the Act provides 'includes tuition reimbursement for parents who unilaterally place their child in private school[.]") (citing 20 U.S.C. § 1412 (a)(10)(C)(ii)); *cf. Dist. of Columbia v. Vinyard,* 971 F. Supp. 2d 103, 115 (D.D.C. 2013) ("Tuition reimbursement for private school tuition when the school district denied a child a FAPE was first recognized by the Supreme Court as part of the courts' broad authority to 'grant

such relief as the court determines [is] appropriate.'") (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 368 (1985)) (citation omitted).

However, this Court has commented that "parents who unilaterally place their child at a private school without the consent of school officials [do] so at their own financial risk." *K.E. v. Dist. of Columbia,* No. 13–0084, 2014 WL 242986, at *5 (D.D.C. Jan. 23, 2014) (citation omitted). "Parents in such situations may be reimbursed only if 'the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.'" *Id.* (citations omitted); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii) (stating that reimbursement may be appropriate if "the agency had not made a free appropriate public education available to the child in a timely manner prior to [the private-school] enrollment"). Put another way, "[t]he reviewing court may grant tuition reimbursement if: '(1) the public placement violated the IDEA and (2) the private school placement was proper under the Act.'" *Jalloh v. Dist. of Columbia,* 968 F. Supp. 2d 203, 210 (D.D.C. 2013) (citation omitted); *see also Oliver,* 2014 WL 686860, at *5 ("[W]hen a public school system has defaulted on its obligations under the Act, a private school placement is 'proper under the Act' if the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits [ ]'—the same standard by which the appropriateness of a public school's IEP is assessed.") (citation omitted). Thus, parents are not entitled to tuition reimbursement where "the educational program and site proposed by DCPS comply with IDEA's FAPE requirement." *James v. Dist. of Columbia,* 949 F. Supp. 2d 134, 139 (D.D.C. 2013); *see also Walker v. District of Columbia*, 2014 WL 3883308, at *5 (D.D.C. Aug. 6, 2014).

The Hearing Officer considered the governing authorities, including the regulation applicable to claims by parents for reimbursement of private school tuition. AR (Document No. 9-5) at 59-60. Included in the regulation cited by the Hearing Officer is the provision that

> [i]f the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private [school] without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment *and that the private school placement is appropriate.*

*Id.* at 59 (citing 34 C.F.R. § 300.148) (emphasis supplied).

Accordingly, reimbursement of tuition may be ordered as a remedy for denial of FAPE only upon a two-pronged showing: (1) the LEA "[did not] make FAPE available to [a child eligible for special education services] in a timely manner"; and (2) "the private school placement [selected by the child's parents] is appropriate." The first prong of the showing requires no further discussion herein: the Hearing Officer determined that DCPS indeed failed to provide K.P-R. a FAPE during the 2011-2012 school year. The determination of the parties' motion in the instant action thus is dependent on the review of Plaintiffs' showing with respect to the second prong.

In his evaluation of the second prong, the Hearing Officer concluded that "the parents' remedy [of reimbursement of tuition for the 2011-2012 school year] [at Lab] is inappropriate because the school is not the least restrictive environment for the student." AR (Document No. 9-5) at 60. Plaintiffs, in the written memoranda and oral arguments in support of their motion, make but minimal effort to point to any error by the Hearing Officer in his consideration of the second prong. Instead, Plaintiffs focus on the Hearing Officer's finding that "[Plaintiffs repeated

withdrawals of three previous complaints and the resulting delay in promptly adjudicating the issues so that DCPS could have a prompt opportunity to correct any deficiencies in the IEP and/or placement that were found to be a denial of FAPE" rendered full reimbursement of the tuition at Lab "inappropriate and unreasonable." *Id.* However, the undersigned, reading that finding in context, finds that it is not in fact the basis upon which the requested remedy was denied; the undersigned, instead, regards that finding as an expression of the frustration of the Hearing Officer that an opportunity for DCPS to undertake more timely evaluations of K.P-R. was lost.[4]

The undersigned finds that Plaintiffs' argument is, essentially, that reimbursement of the tuition at Lab is the remedy warranted solely because K.P-R.'s IEP was inadequate. However, in an instance in which another judge of this Court was confronted with a remarkably similar argument, that argument was rejected:

> An inadequate IEP is a necessary but insufficient condition for private school placement and reimbursement. Although the District must pay for private school placement "if no suitable public school is available[,] . . . if there is an appropriate public school program available . . . the District need not consider private placement, even though a private school might be *more* appropriate or better able to serve the child."

*N.T.*, 839 F. Supp 2d at 34 (citation omitted), 35 n.3 (hearing officer could consider whether parental placement was the least restrictive environment in evaluating whether tuition reimbursement was the proper remedy for denial of FAPE) (citations omitted); *see also K.E.*, 2014 WL 242986, at *9 ("Since the IDEA does not require a school district to pay for a private

---

[4] The undersigned has considered the email communications from Plaintiffs to Defendant regarding the withdrawal of a complaint and related matters, offered by Plaintiffs as "additional evidence[,]" *see* Plaintiffs' Memorandum at 14-15; however, the undersigned finds that the communications are not at all probative of whether "the private school placement was appropriate."

school education simply because that opportunity would be ideal for a student, the Court is unpersuaded by the plaintiffs' contention that any private school that provides a child an educational benefit is appropriate.") (citation omitted).

The undersigned therefore finds that Plaintiffs have failed to identify any error by the Hearing Officer in his determination to deny Plaintiffs' request for reimbursement of K.P-R.'s tuition at Lab for the 2011-2012 school year. More specifically, the undersigned finds that the Hearing Officer considered all of the evidence offered during the hearing, relied upon the applicable authorities, and clearly articulated his findings. Plaintiffs thus have failed to carry their burden to demonstrate "that the hearing officer was wrong." *Reid*, 401 F.3d at 521; *cf. K.E.*, 2014 WL 242986, at *9 (affirming determination of the hearing officer to decline to award reimbursement of private school tuition as a remedy for denial of FAPE where finding that private school "was not an appropriate placement" for the child was "supported by the administrative record.").

### *The Court Lacks Subject Matter Jurisdiction to Entertain Plaintiffs' Request That K.P-R. be "Reimbursed and Placed at Lab for the 2012-2013 School Year"*

Plaintiffs do not dispute that the April 2012 due process complaint notice which they filed was confined to the IEP, placement, and tuition for the 2011-2012 school year. *See* AR (Document No. 9-5) at 3-13; 45 ("The issues adjudicated are: (1) Whether DCPS denied [K.P-R.] a FAPE [during the 2011-2012 school year] [by failing to provide an appropriate IEP][;] [and] (2) Whether DCPS denied [K.P-R.] a FAPE by failing to propose/provide the student an appropriate placement/ location of services *from October 12, 2011, to present*." AR (Document

No. 9-5) at 45 (emphasis supplied); *see also id*. at 3-13.[5]  The undersigned, upon a searching review of that administrative due process complaint notice, finds that Plaintiffs made no reference whatsoever to placement for the 2012-2013 school year; additionally, a searching review of the Hearing Officer Determination reflects no consideration or determination by the Hearing Officer of 2012-2013 school year placement and location of services.[6]  The conclusion that placement and location of services for the 2012-2013 was never addressed during the underlying administrative proceedings thus is inescapable.

The undersigned is mindful that the Court (Friedman, J.) denied Defendant's motion to dismiss – on the ground of Plaintiffs' failure to first exhaust their administrative remedies – Plaintiffs' claims regarding the 2012-2013 school year.  However, the undersigned finds that in so ruling, the court, citing Plaintiffs' complaint, assumed that the issue of prospective placement at Lab had in fact been presented to the hearing officer.  *See Pinto*, 938 F. Supp. 2d at 32 ("The problem with the District's argument is that the issues presented in this action – whether plaintiffs are entitled to [1] reimbursement for tuition expenses and costs [2] *and prospective placement at the Lab School* – were in fact presented to the Hearing Officer in the first instance.  *See* Compl. ¶ 62.") (emphasis supplied).  While the first of the issues articulated by the court was in fact addressed, the second actually was not.[7]

---

[5] "[T]o present[,]" in context, can only mean at the time of the administrative due process proceedings, which commenced with the filing of the due process complaint notice in April 2012, and concluded at the conclusion of the administrative due process hearing in July 2012.

[6] Indeed, the Hearing Officer declined to make any finding regarding placement and location of services for the 2012-2013 school year, and ordered DCPS – should Plaintiffs consent to the further evaluations of K.P-R. – to, *inter alia*, "revise [K.P-R.'s] IEP as appropriate and determine an appropriate placement and location of services for the student consistent with the findings of this Order for the 2012-2013 school year." *Id.* at 62.

[7] The court's citation to the complaint filed by Plaintiffs in this action warrants the conclusion that the court credited Plaintiffs' allegation; the undersigned observes that the court would have had no basis upon which to

In so finding, the undersigned does not disregard the prior opinion of the court, or purport to modify it. Instead, the undersigned merely observes that the factual predicate on which the court relied – *i.e.*, that the issue of "prospective placement at the Lab School" was "presented to the Hearing Officer in the first instance[]" – is not borne out upon a review of the administrative record.

Finally, the undersigned observes that in denying the Defendant's motion to dismiss the claims regarding the 2012-2013 school year for Plaintiffs' failure to exhaust their administrative remedies with respect to such claims, the court did not alter the settled proposition that the exhaustion of administrative remedies is a prerequisite to judicial review by the district court; indeed, the court noted that Defendant was correct in its assertion that "plaintiffs cannot bring this suit under the IDEA if they did not seek relief through the appropriate administrative channels." *Pinto,* 938 F. Supp. 2d at 32 (citations omitted).

## CONCLUSION

For the reason set forth herein, Plaintiffs' Motion for Summary Judgment (Document No. 11) will be denied, and Defendant District of Columbia's Motion for Summary Judgment (Document No. 12) will be granted, by order filed contemporaneously herewith.

                                                                  /s/
                                               DEBORAH A. ROBINSON
                                               United States Magistrate Judge

September 29, 2014

---

determine otherwise, since at the time Defendant moved to dismiss the claims regarding the 2012-2013 school year, the administrative record –which includes the Plaintiffs' due process complaint notice, the transcript of the due process hearing, and the Hearing Officer Determination – had not yet been filed.